UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 06-cv-02538-REB

KENNETH VELASQUEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE,[1] Commissioner of Social Security,

    Defendant.

## ORDER REVERSING DISABILITY DECISION
## AND REMANDING TO COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#3], filed December 18, 2006, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of a degenerative joint disease of the right ankle, polysubstance abuse, depression, and bipolar disorder. After his

---

[1] Michael J. Astrue was confirmed by the Senate to replace Jo Anne Barnhart as the Commissioner of Social Security on February 1, 2007. Thus, he is substituted as the defendant in this suit. **FED.R.CIV.P.** 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action need to taken to continue this lawsuit.

application for supplemental security income benefits was denied, plaintiff requested a hearing before an administrative law judge. A hearing was held on June 13, 2006. At the time of this hearing, plaintiff was 49 years old. He has a high school equivalency diploma and past work experience as a construction worker, janitor, refrigeration assembly worker, and trash collection driver. Plaintiff has not engaged in substantial gainful activity since his alleged date of onset, August 31, 1998.

The ALJ found that plaintiff was not disabled in the absence of polysubstance abuse and therefore not entitled to disability insurance and supplemental security income benefits. Although the medical evidence established that plaintiff suffered from severe physical and mental impairments, the judge concluded that the severity of such impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that although plaintiff lacked the residual functional capacity to perform his past relevant work, he could perform a limited range of unskilled, sedentary work and that there were jobs existing in significant numbers in the national economy that were consistent with his limitations. The ALJ therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42

U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of

3

> the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. **Id.** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. **Brown**, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. **Hedstrom v. Sullivan**, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." **Musgrave v. Sullivan**, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993).

Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff's grounds on appeal all boil down to an assertion that the ALJ erred in determining his physical and mental residual functional capacity. I agree and, therefore, reverse.

With respect to plaintiff's physical limitations and abilities, the ALJ improperly discounted the opinions of the consultative examiner, Dr. Mark Stevens, and plaintiff's treating source, physician's assistant Joe Bulow.[2] Dr. Stevens's examination noted that plaintiff "has a bulging deformity of his left biceps region," due to a torn left biceps muscle. Based on that finding, Dr. Stevens concluded that plaintiff should be limited to lifting and carrying less than ten pounds, should limit pushing and pulling with the left arm, and could only occasionally reach up, out, or down with that extremity. (Tr. 177-178.) Bulow concurred with that assessment of plaintiff's capabilities. (Tr. 187.) Nevertheless, the ALJ afforded these opinions no weight because he found Dr. Stevens's conclusions regarding these lifting and manipulative limitations inconsistent with his concurrent notation, under the heading "MOTOR STRENGTH/MUSCLE BULK AND TONE," that plaintiff exhibited "5/5 strength throughout." (*See* Tr. 16, 177.) He thus concluded that plaintiff "has no upper extremity impairment which results in more

---

[2] **Note re: Pas as acceptable medical sources**. Although I find that it was error for the ALJ to discount Bulow's opinion regarding plaintiff's functional abilities, he properly disregarded Bulow's conclusion that plaintiff was disabled, a determination that is reserved solely to the Commissioner. (Tr. 19, 188). *See* **Social Security Ruling** 96-5p, 1996 WL 374183 at *2-3 (SSA July 2, 1996); **Smith v. Astrue**, 2007 WL 2377113 at *3 (D. Kan. Aug. 10 ,2007).

5

than minimal functional limitations." (Tr. 16.)

In so finding, the ALJ improperly substituted his own lay opinion for that of the medical expert. *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004); *see also McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (ALJ may reject physician opinion "only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion") (citation and internal quotations marks omitted). There is simply no concrete evidence to support the ALJ's inference that the "5/5" finding did not jibe with the limitations found by Dr. Stevens.[3] Given the rather vague nature of that finding, especially in comparison to the specificity of the lifting and manipulative restrictions imposed, the proper course of action would have been to recontact Dr. Stevens for further clarification, rather than to reject his medical opinion outright. *See* 20 C.F.R. § 416.927(c)(3); **Social Security Ruling** 96-5p, 1996 WL 374183 at *6 (SSA July 2, 1996).

The ALJ relied instead on the opinion of a single decision-maker ("SDM").[4] (Tr. 19.) An SDM is not a medical professional of any stripe, and the ALJ candidly recognized that his opinion was entitled to no weight as a medical opinion, nor to consideration as evidence from "other non-medical sources." (Tr. 19 (citing 20 C.F.R.

---

[3] Indeed, it is not apparent in what way the facility for "motor strength" (not "muscle strength," as stated by the ALJ (*see* Tr. 16)) correlates with lifting and manipulative capacity, if it does at all.

[4] Plaintiff's case was initially determined at the administrative level by an SDM. Colorado is one of ten states participating in the Commissioner's Plan for a New Disability Claim Process. *See* 59 Fed. Reg. 47887 (Sept. 19, 1994). This pilot program is testing several model procedures for streamlining the administrative review process, including use of an SDM, rather than a team composed of a disability examiner and a medical consultant, to make the initial determination of disability. *See* 62 Fed. Reg. 49598 (Sept. 23, 1997). *See also Goupil v. Barnhart*, 2003 WL 22466164 at * 2, n.3 (D. Me. Oct. 31, 2003) (noting that SDM has no medical credentials and thus his opinion is entitled to no weight).

6

§§ 416.927(f) & 416.913(d)(4)).) Nevertheless, it is clear that the SDM's opinion was the basis for the ALJ's conclusions regarding plaintiff's physical residual functional capacity. Although the ALJ claimed that this opinion was consistent with the record as a whole, he cited only to plaintiff's activities of daily living in support of that conclusion. (*See* Tr. 19.)[5] Although plaintiff testified that he *could* do a "variety of household chores" including washing dishes, cooking, and making a bed (*see* Tr. 236), there is no evidence either that he actually does any of these things, much less on a regular or consistent basis. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("[S]poradic diversions do not establish that a person is capable of engaging in substantial gainful activity."). More importantly, nothing in the record establishes that any of these activities is inconsistent with Dr. Stevens's lifting and manipulative restrictions.[6]

Nor do I agree with the Commissioner that the ALJ's conclusion in this regard was harmless in light of his determination that plaintiff was limited to sedentary work. The ALJ found that plaintiff was not able to perform a full range of sedentary work, even without consideration of the biceps injury. (*See* Tr. 22.) "Where an individual is unable to perform the full range of sedentary work, her occupational base will be

---

[5] The ALJ's failure to specifically identify any other record evidence "makes it difficult, if not impossible, for the reviewing court to determine whether substantial evidence supported the ALJ's decision." *Bolan v. Barnhart*, 212 F.Supp.2d 1248, 1262 (D. Kan. 2002). This type of boilerplate "conclusion in the guise of findings" cannot constitute substantial evidence. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).

[6] Similarly, the fact that plaintiff testified he could drive provides little basis for discrediting a lifting restriction, especially considering the fact that plaintiff has forfeited his right to hold a driver's license by virtue of his multiple past drunk driving convictions. Moreover, the ALJ's finding that plaintiff goes fishing "regularly" (Tr. 19) plainly overstates the evidence, as plaintiff testified that he fishes only "once every couple of months" if and when his brother drives him (Tr. 237).

7

eroded by additional limitations or restrictions on her exertional and non-exertional capacities." **Colon v. Commissioner of Social Security**, 2004 WL 1144059 at *8 (N.D.N.Y. March 22, 2004). This determination is "especially critical for individuals who have not yet attained age 50," such as plaintiff. **Social Security Ruling** 96-9p, 1996 WL 374185 at *2 (SSA July 2, 1996) ("Since age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work, the conclusion whether such individuals who are limited to less than the full range of sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.") (footnote omitted).[7] Clearly, the error was not harmless.

The ALJ's conclusion that plaintiff would not be disabled in the absence of polysubstance abuse cannot withstand scrutiny either. Pursuant to the Contract With America Advancement Act of 1996, Pub. L. 104-121, 110 Stat. 847, §§ 105(a)(1)(C) & 105(b)(1)(i) (codified at 42 U.S.C. §§ 423(d)(2)(C) & 1382c(a)(3)(i)), a claimant is not disabled if alcohol or substance addiction is contributing factor material to the finding of disability. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001). Proper analysis of this issue requires the ALJ first to determine whether plaintiff is disabled. *Id.* (citing 20 C.F.R. § 416.935(a)). If he so finds, the ALJ must then determine whether plaintiff would still be disabled in the absence of the substance abuse. *Id.* (citing 20

---

[7] I also question the validity of the ALJ's step 5 finding that the position of surveillance system monitor would be available to plaintiff regardless of his physical limitations. The vocational expert's testimony suggests that plaintiff would be an unlikely candidate for that position due to his criminal history. (Tr. 251.)

8

C.F.R. § 416.935(b)(1)). If plaintiff's remaining impairments are found not disabling in the absence of substance abuse, then substance abuse is a contributing factor material to the finding of disability, and plaintiff is not disabled. *Id.* at 1215 (citing 20 C.F.R. § 416.935(b)(2)(i) & (ii)).

In making this determination, the ALJ had available to him opinions from two examining psychologists, Dr. Brett Valette and Dr. Richard Madsen. According to Dr. Valette, "[i]t sounds like all of [plaintiff's mental disorders are] related to [] substance abuse." (Tr. 160.) Conversely, Dr. Madsen concluded that plaintiff's substance abuse did not significantly contribute to the severity of his mental impairments. (Tr. 208.) In rejecting Dr. Madsen's opinion, the ALJ said that

> [c]onsidering the claimant's ongoing substance abuse, and his use of alcohol on the day of this evaluation, the undersigned finds that Dr. Madsen's conclusions are also significantly influenced by the claimant's alcohol and drug abuse, and thus shed little light on the claimant's mental status when he abstains from substance abuse.

(Tr. 15.) However, there is absolutely nothing in the record to suggest that Dr. Madsen did not properly account for the fact of plaintiff's substance abuse in making his determination. Again, the proper course is not for the ALJ to substitute his own opinion for that of the psychologist or to speculate as to the basis for the psychologists opinion, but rather to recontact him for further clarification.

Moreover, an importantly, the ALJ did not expressly discredit Dr. Madsen's conclusions based on any conclusion that they were incredible or inconsistent with Dr. Madsen's observation that plaintiff, despite claims of having last drank alcohol two or

9

three months prior to the examination, smelled of alcohol. (*See* Tr. 203.) Instead, he found Dr. Madsen's opinion "insufficient to support [his] diagnosis of impaired intellectual functioning, which was based [on] a brief mental status exam, but not on more thorough testing." (Tr. 15-16.) As a basis for discrediting Dr. Madsen's opinion, nothing in this explanation distinguishes it from the opinion of Dr. Valette, other than its ultimate conclusion. Both doctors examined plaintiff but a single time, and neither performed detailed mental functioning testing. The fact that they reached divergent conclusions does not in itself provide sufficient basis for crediting the one over the other.

This error was carried through in assessing plaintiff's mental residual functional capacity. In support of his conclusion that plaintiff exhibited no more than moderate mental limitations, the ALJ relied on the opinion of a non-examining state agency doctor, Ellen Ryan. (Tr. 18-19, 91-93, 171.) However, Dr. Ryan's opinion considered only Dr. Valette's report, not Dr. Madsen's, which post-dated her review. (*See* Tr. 171.) Dr. Ryan's opinion therefore provides but half a picture of the evidence of record on this issue. It was not proper for the ALJ to reject the opinion of an examining source in favor of that of a non-examining source, at least not on the grounds specified in the ALJ's opinion. The ALJ's boilerplate incantation that Dr. Ryan's opinion "is well supported by and consistent with the record as a whole" (Tr. 18), in the absence of specific citation to the evidence thought to support that conclusion, is insufficient to save his mental residual functional capacity determination. **Bolan v. Barnhart**, 212 F.Supp.2d 1248, 1262 (D. Kan. 2002).

10

For these reasons, the disability decision must be reversed. Although plaintiff requests a directed award of benefits, I find that it would be inappropriate to exercise my discretion to direct an award in this case. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993).[8]

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**; and

2. That this case is **REMANDED** to the ALJ, who is directed to:

   a. Reevaulate whether plaintiff's left biceps tendon tear constitutes a "severe" impairment at step two of the sequential evaluation and articulate fully his findings in this regard;

   b. Reevaluate whether plaintiff's polysubstance abuse is a contributing factor material to a finding of disability;

   c. Recontact any of the treating or examining physicians and/or pscyhologists for further clarification of their findings, seek the testimony of medical experts, order subsequent consultative examinations, or otherwise further develop the record as he deems necessary;

   d. Reevaluate plaintiff's physical and mental residual functional capacity, articulating fully his findings in this regard in light of his

---

[8] By this decision, I do not find or imply that plaintiff is or should be found to be disabled.

reevaluation of the evidence as above directed; and

e. Reassess the disability determination.

Dated March 20, 2008, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**